IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-6

No. 302A21

Filed 11 February 2022

IN THE MATTER OF: K.M.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 27 May 2021 by Judge John K. Greenlee in District Court, Gaston County. This matter was calendared for argument in the Supreme Court on 22 December 2021 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief filed for petitioner-appellee mother.*

*No brief filed for appellee Guardian ad Litem.*

*W. Michael Spivey for respondent-appellant father.*

NEWBY, Chief Justice.

Respondent-father appeals from the trial court's order terminating his parental rights to K.M.S. (Alice).[1] Counsel for respondent filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude that the two issues identified by counsel in respondent's brief as arguably supporting the appeal are meritless, and we therefore affirm the trial court's order.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

¶ 2 This case arises from a private termination action filed by petitioner, Alice's mother. Petitioner and respondent, Alice's father, met when petitioner was a senior in high school. Immediately after finishing high school, petitioner and respondent moved into an apartment, where they lived together for approximately nine months. Three months after she moved out of the apartment and about six weeks after she and respondent were no longer in a relationship, petitioner learned she was pregnant. The parties never married, though petitioner told respondent about the pregnancy. Respondent was unemployed while petitioner was pregnant. Respondent was present at Alice's birth on 23 June 2013, but no father is listed on Alice's birth certificate. Alice has lived with petitioner since her birth.

¶ 3 Respondent bought diapers for Alice when she was an infant. Respondent also testified that he provided formula, which petitioner contested. Respondent also made one car payment for petitioner. By the time Alice was one year old, respondent and petitioner's relationship "totally cease[d]." A year and a half after Alice was born, petitioner obtained a Chapter 50B restraining order against respondent because "[h]e was mentally abusive" and "was constantly in a rage and upset." Around the same time, respondent allegedly "tried to sign up [to pay child support] at [the Gaston County Department of] Social Services and didn't know [petitioner]'s address." Though respondent recalled speaking to a social worker there and submitting paperwork, he did not execute an affidavit acknowledging his paternity nor did

petitioner ever receive child support. Respondent has not seen Alice since she was about a year and a half old. Respondent acknowledged that he never pursued legal action to legitimate Alice. Respondent did file a complaint for custody of Alice and to pay child support, but paternity has not been established in that action.[2]

On 19 January 2021, petitioner filed a petition alleging a ground existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(5) (failure to legitimate). Respondent filed an answer on 11 March 2021 wherein he admitted that he had neither legitimated Alice through marriage to petitioner nor "established his paternity with respect to the juvenile through N.C.G.S. § 49-14, 110-132, 130[A]-101, 130A-118, or any other judicial proceeding." At the termination hearing, petitioner submitted into evidence an affidavit from the North Carolina Department of Health and Human Services (DHHS) stating that no affidavit of paternity had been received. Petitioner also testified that she never "receive[d] any kind of letter or correspondence . . . that [respondent] had filed a petition . . . to legitimate [Alice]."

Based on all the evidence, the trial court found respondent did not establish

---

[2] In June of 2020, respondent's first attorney filed a complaint for custody. Shortly thereafter, however, the attorney discovered she had a conflict of interest and withdrew from the case. Respondent hired a second attorney, who filed a new complaint for custody on 3 December 2020. The trial court found that respondent "never took any action to prosecute his [c]omplaint in the first filed custody action." Moreover, the trial court found "that no hearing was ever held to make any substantive findings of fact or judicial decree relative to [respondent's] paternity of the juvenile in the second filed case." The guardian ad litem's report filed with the trial court states the second action "is stayed pending the outcome of the case at bar."

paternity under any of the five prongs set forth in the statute. *See* N.C.G.S. § 7B-1111(a)(5) (2019). Thus, the trial court concluded that a ground existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111. The trial court also concluded that terminating respondent's parental rights was in Alice's best interests. *See id.* § 7B-1110 (2019). Accordingly, the trial court terminated respondent's parental rights.

¶ 6 Counsel for respondent filed a no-merit brief on his client's behalf under Rule 3.1(e) of the Rules of Appellate Procedure, identifying two issues that could arguably support an appeal but also stating why those issues lacked merit. First, counsel noted that respondent objected at the hearing to admission of the certified reply of DHHS to petitioner stating that no affidavit of paternity had been received. Counsel conceded, however, that the Juvenile Code requires that DHHS's "certified reply shall be submitted to and considered by the court." N.C.G.S. § 7B-1111(a)(5)(a). Because respondent did not argue at the trial court that the document was not DHHS's certified reply to petitioner's inquiry regarding whether an affidavit had been filed, counsel concluded this issue lacked merit.

¶ 7 Counsel next discussed whether the trial court's findings of fact were supported by clear, cogent, and convincing evidence and supported the conclusions of law. Counsel asserted the trial court's findings of fact "are supported by the testimony of both [petitioner and respondent]." Moreover, counsel noted that "[t]he trial court

made findings that encompass all of the statutory factors" required to determine whether termination of respondent's parental rights was in Alice's best interests. Thus, counsel concluded that this second issue also lacked merit. Finally, counsel advised respondent of his right to file pro se written arguments on his own behalf and provided him the documents necessary to do so. Respondent has not submitted written arguments to this Court.

Rule 3.1(e) of the Rules of Appellate Procedure "plainly contemplates appellate review of the issues contained in a no-merit brief." *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). When a no-merit brief is filed pursuant to Rule 3.1(e), it "will, in fact, be considered by the appellate court and . . . an independent review will be conducted of the issues identified therein." *Id.* at 402, 831 S.E.2d at 345. This Court conducts a "careful review of the issues identified in the no-merit brief in light of our consideration of the entire record." *Id.* at 403, 831 S.E.2d at 345. Having reviewed the two issues identified by counsel in the no-merit brief, we are satisfied that the trial court's order terminating respondent's parental rights is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.